May I please the court? Oh yeah, and let me, we've got one counsel, one of you will be arguing rebuttal, right? Yes, as I understand it, I will be arguing for ten minutes, Mr. Pence will be arguing for five minutes, and then Mr. Jan will be arguing and we'll be reserving time for rebuttal. Okay, well, who's reserving the time? Because if you use it all, then you don't get rebuttal. So you're going to only argue, how much time do you want for rebuttal? Let me reserve three minutes for rebuttal. Okay, so if it gets used up by all of you, you're out of luck. Okay, you can go ahead and take it out of my time. All right, let's put seven on the clock then for him, and then we'll reserve three. All right, go ahead. May it please the court? I'm Eric Alan Isaacson. I am a member of the bar of this court, but I am here pro per, as a member of the class that's bound by this settlement. I objected below to the fact that important parts of the record were filed under seal with lots of redactions and exhibits to the complaint completely blacked out, more than 50 pages like this. I think that's a violation of- Did you move to unseal those? I asked the court to unseal it in my objection. The last sentence of the objection asked for it to be unsealed.  So you had a motion to unseal it? I did not file a formal motion because I was not a party to the action. I was simply an objector. Can't the public move to unseal in the public interest as well, even if you're not a party? Absolutely. But why didn't you then? Well, it would require a formal motion to intervene. I was there simply as an objector. It wouldn't require a formal motion to intervene. A member of the public could file a motion to unseal without having to intervene in the litigation. Well, if you'd like me to do that, I'll file a motion to unseal Volume 7 of the exerture record in the prior appeal. I'll do that tomorrow. Let me ask why even with the sealed complaints, class members weren't able to understand the legal issues of the settlement itself. What prohibited you from being able to capture the understanding of what the settlement entailed? Well, there are a number of problems. The first is that the class notice doesn't clearly explain the nature of the claims in the case or what's at stake. It basically refers people to the settlement website. At the settlement website, there's a heavily redacted Second Amendment complaint, which has, quite frankly, the claims in it that were ultimately sustained or that had been dismissed by the district court, and a heavily redacted Third Amendment complaint, which this court sustained the dismissal of. But the Ninth Circuit's opinion is not on the settlement website. So there's no way for a class member who is not educated in law to figure out what's going on with those complaints. And there's additional complaints. So what's the best authority you have for the notion that the notice itself has to have this additional information, such as what was in the Ninth Circuit's opinion or anything else like that? Well, I think the rule itself says that you need to have a notice that explains the claims and the defenses. And I don't think that the notice explained the claims clearly, and I don't think it explained the defenses. Now, this is an argument that Mr. Jan has focused on more than I have. So if you want specific case citations, he'll be more able to give them to you. My two big issues personally are the filing under seal, which violates the First Amendment and public rights of access, also violates due process of class members, because class members in a settlement class have a right to see the record. Well, but the problem is you haven't asked us and you haven't asked below for us to go through and figure out whether any of this should have been sealed or not. And so the only issue before us is not whether things should be sealed or not sealed, but looking at the sealed material, was there anything that would have been added? Well, I have no idea what would have been added. I mean, I've got 50 pages completely blacked out. If I go to a declaration, I can go to the settlement website, I can see a completely superseded First Amendment complaint, a Second Amendment complaint heavily redacted, and a Third Amendment complaint heavily redacted. No exhibits on any of them. I can go to PACER and then download the complaints in their redacted forms. It'll cost me $30 apiece to get them with the exhibits, including a lot of them that simply say filed under seal with no further information. So the redacted Third Amendment complaint, I looked at that this morning, discusses the like button, the collection of user information through cookies, when the data was collected and how, and plaintiff's theory of liability and damages. Why isn't that information sufficient to give the class an understanding of what the settlement entailed and what those issues were about? Because we don't know what's in the portions that were redacted. In the Third Amendment complaint, one of the redactions— So any time there's a redacted complaint, a class member has the right to unredact? Any time there's a redacted complaint, the court has an obligation to make findings that redaction is necessary. The proponent of redaction has an obligation to make a compelling showing. Counsel, that may be true. That's not what's on appeal to us right now. What's on appeal to us, and I think this was Judge Sanchez's question, is why isn't the unredacted information enough to give you a clue as to what this case is about? It may give me a clue. It doesn't give me enough information. What more would you want? I would like to know what was redacted. What more would be relevant to whether you would settle this or not? They told this court that this material was so critical to their complaint. That may be true or not true. That's not before us, Counsel. Counsel, you're not understanding my question. That's not before us. You didn't make the motion. You could have. You didn't. The only question before us is what information do you think would have made a difference? Can you give me an example of some information that you think might have been redacted that would have made a difference as to whether you would have objected or not? Without wild speculation, no, I can't, Your Honor. Other than that, it's very important and it's very embarrassing. The other problem with this settlement approval is that rather than applying the amended version of Rule 23c, which requires the court to consider a number of things, including the provision for attorney's fees and the timing of payment, as well as whether it treats class members equitably relative to one another, rather than applying Rule 23 as amended in 2018, the district court applied a presumption of adequacy based on the fact that there were only nine objectors. That cannot be sustained under this Court's decisions, saying Rule 23c as amended in 2018 controls. And the attorney's fee provision is extremely important, Your Honor, because there's a fee-shifting provision. Can I ask, I saw your argument about the presumption, and I saw that it related to the court's specific discussion of the class's reaction to the proposed settlement. But you seem to be making a broader argument that that discussion there, the court was making a presumption of fairness as to everything. So where in the record is that argument supported? It's supported right in the court's order. The court has a heading three, reasonableness and fairness. And the first thing it says is that this is reasonable and fair. A strong presumption is reasonable and fair. Actually, the first thing it says is it's fair based on the handling factors analysis that were in the preliminary approval order. There is no such analysis in the preliminary approval order. The second thing that it says is that there's a strong presumption of fairness and adequacy from the fact that there are only nine objectors. And that is absolutely inconsistent with the amended Rule 23C and absolutely inconsistent with this court's precedents which prohibit such an assumption. I see, unfortunately, my time has run. Thank you. Thank you very much, Your Honors. Good morning, Your Honors. John Pence on behalf of Appellants Jan and Feldman. Our primary problem with this settlement approval is that the district court failed to properly value the two statutory claims that survived this court's 2020 decision and applied an improper measure of maximum possible damages. Those two claims, of course, are the Federal Wiretap Act and the California Invasion of Privacy Act. Well, counsel, it seems like you have two problems with that argument. Number one is the statute does seem to be permissive as to may. But the bigger problem is, and the district court flatly considered this, I mean, you're suggesting there would be $1.25 or $1.24 trillion, that's with a T, dollars in damages. You wanted to use this case, or under your theory, you would bankrupt META. That doesn't strike me as a, and the district court said this, that would violate META's due process if they were subject to that amount of war. Your Honor, you're correct, and we readily concede that in both our objection and our brief. And I would just point out that although there is a permissive or a discretion under the Wiretap Act, there's no such discretion under the California Invasion of Privacy Act, which provides for- And is that also $10,000 per- That's $5,000. That's half as much. Oh, so it's only $600 billion. Yeah, that's- Well, they might be able to survive that. I am sorry to fall into their market capitalization, but no, no. I think the cases illustrate what would happen. We saw in Wakefield that the court found that, and again, remember, that was a robocall case, so even though it was only $900 million, the Ninth Circuit found there that it needed to go back for consideration under the Wakefield standards. There's another case that we did not cite in our brief. It's Golan v. Free Eats from the Eighth Circuit. There, a jury awarded a $1.6 billion verdict, and then the court, and this is key, because this is what we think would have happened here. The court reduced it to some number between $500 per class member and zero, and I believe it was $10 per class member for a robocall. But here, the violation of privacy is much more serious here. I mean, this was really spying on- But the issue, I guess, as I understand it, is the district court was relying on class counsel's estimate of a $900 million settlement or potential recovery under the statute. You're saying that was an abuse of discretion because the court should have looked at $1.24 trillion, but I'm hearing you acknowledge that there's a due process problem. So what made the district court's consideration of $900 million an abuse of discretion? Because the $900 million was based on application of the case State Farm v. Campbell, which is a case limiting punitive damages and tethering them to no more than 10 times actual monetary damage. But we have Wakefield, which is on point. But Wakefield explicitly rejected the State Farm limitation of 10 to 1. Also, in a statutory damages case, actual monetary damages are irrelevant. In fact, in this case, we really have none. Facebook claims that they never sold this information. They never monetized it. Plaintiffs hired an expert to determine how much their profits went up during the class period and then assume that all of that increase in profits was attributable to their holding on to this Internet history information. But that makes little sense to me because if they didn't sell it, they didn't make any money from it. But be that as it may, the $90 million figure is based on an expert report that was never even submitted or made part of the record. And then to use that to then say 10 times that is the maximum. We have a case, Rodriguez, that affirmed the district court saying that 10 percent of a class's estimate of its own maximum damages was reasonable. And here, if the court's using $900 million as a benchmark and doing 10 percent as a reasonable recovery of $90 million, why isn't that a reasonable way to go about it? Well, we don't disagree that a 10 percent recovery on the facts of this case may be a reasonable settlement amount. But there has to be 10 percent of what the class would realistically recover after trial in front of a jury. And the juries generally don't – they award full damages because that's what the statute says you do, and even in the class action. And then courts will then reduce that to bring it within the bounds of due process. We believe the bounds of due process are far higher than $900 million. You know, Facebook has already paid $5 billion in a fine. And the goal – and you have to look at – Wakefield says you look at the goals of the statute to determine whether a resulting verdict or amount – or judgment amount is too high. And here, one of the goals of the statute is deterrence of this kind of activity. And, you know, Facebook is – Well, they stopped doing it. That was part of the settlement. I'd say that's pretty good deterrence. Oh, they didn't say they'd stop. They just destroyed the information they gathered 10 years ago. Your time's up. Thank you, Your Honor. We'll move on to our third counsel. Good morning, Your Honors. May it please the Court, my name is Kendrick Jan, I represent Feldman and Jan Objector Appellants. And I am just – I would just like to talk about class notice. And if I can get back to Judge Sanchez's issue, I'd be more than happy to do that. I'd like to discuss three quick items first as kind of an overview. Phillips – or the Supreme Court in Phillips Petroleum tells us that due process requires fully descriptive notice. That fully descriptive notice requirement is effectively codified Rule 25 – I'm sorry, 23C. So what was – maybe that's what would help us to focus on this. What was defective? What could they have done differently? Because I read it and I thought, this is pretty good. But you obviously don't agree. So what needed to be in there? Thank you. I absolutely disagree. Because we look at Lane and Rodriguez, and Lane and Rodriguez, Lane v. Facebook and Rodriguez, both describe something called settlement notice. Settlement notice is that which is generally considered to be ordered under Rule 23E1. And what Lane and Rodriguez state is that settlement notice must generally describe the terms of the settlement and class members' interest in the settlement. But describing only settlement terms and the right to make a claim does not satisfy the persistent requirements of Rule 23C. The good news is that when a court orders settlement notice, the giving of a settlement notice under 23E1, it does not obviate 23C's requirements. In fact, it's anticipated. Mr. Jay, can I ask you this? I understood you to make a procedural challenge to notice below, but you're making a substantive challenge to the notice that was given. Did you waive this argument? Absolutely not. Why not? We look at, if you would, our reply page 10, where we describe that we objected to the sufficiency of the notice under 23C2B, Roman numeral III, which is what requires a description of class claims. Okay, 23C requires that. But did you give argument as to challenges to the substance of the notice itself and why it was defective? We did. Our point was the class simply doesn't know enough. And the issue, some of the ways we talked about it is, you know, the court's describing there aren't many of you here. There would be a lot more of us here, Your Honor, if more was told consistent with and to satisfy the requirements of 23C2B sub Roman numeral III. There is no definition of class claims in this case. What there is, is Facebook, the notice form, describes that a lawsuit has been filed alleging that Facebook, generally speaking, and this is a quote, improperly obtained and collected data from users. There's a slight extension on that description, but that's it. That is a description of facts. Those facts are never translated to a legal claim. And so that is what is required by 23C2B sub III. What about the fact that the notice had to hyperlink to other documents in a way for people to inform themselves more? I appreciate that. And I appreciate that there is a broader way of getting information to folks. But what 23C says is class notice. The notice form must be clear, concise, in plain and easily understood language and provide a statement of class claims. Doesn't the class notice have the link? I guess you're saying that's on the web. Listen, if I give you a, not you, forgive me, if I give your brother or sister a 100-page complaint, is that a clear and concise statement of class claims made in plain and easily understood language? No, it's not. And here it's especially troubling. Why? Because there are multiple complaints listed in the important documents link on the website. The one that appears to be operative, that is the most current version, the third amended complaint, contains nothing of value to these people. None. So I say, oh, gee whiz, I've got to read hundreds of pages of complaints. I'll disregard these old ones, I'll go right to the third, and I'm reading something that is not even available to me. These are the contractual claims that this court said do not exist. So do I know that? Should I now go back and read the second amended complaint? Why would I? Counsel, below, I think you argued that it was the delivery of the notice that you were challenging. You're not arguing that anymore? I think I did. We use the term best practicable, and really best practicable is means. And I don't have a problem with the means because they actually sent an electronic notice, an email notice. Oh, my goodness, I'm over. An email notice of the claim form, but the claim form didn't satisfy the requirements of 23C. It absolutely did not. Now, it was supplemented by this social media program that was supposed to drive folks to the settlement website where these important documents were posted, but those don't satisfy the clear and concise statement of legal claims, and it does not satisfy the plain and easily understood obligation of the presentation of these items in the class form itself. Okay. Thank you. And with that, I'll reserve your co-counsel or separate counsel some time for rebuttal. And we're splitting here as well, 10 minutes each. Good morning, Your Honors. Yes, we ask permission to split this roughly 10 seconds. That's fine. You're Mr. Strait? Yes, Your Honor. David Strait, counsel for Plaintiff's Appellants. As noted before, our counsel for MEDA, Christopher Chorba, always should be heard as well, and we'll split approximately 10 minutes. In this appeal, the objector appellants, their argument rests on three pillars. First, they're asking this court to change existing Ninth Circuit law articulated in Lane v. Facebook and more recently in the Apple device performance opinion. Second, they're asking this court to create new, functionally unworkable law. And third, they're misrepresenting the district court's faithful application of hand-on and Bluetooth regarding the presumption. We believe this to be a historic settlement with overwhelmingly positive reaction from the class. More than 1.5 million valid claims submitted, only seven or eight or nine objectors, depending on how you count the client objectors, and only three here today. Plaintiffs are available to answer any questions your honors have, but if none, I respectfully ask that the district court's judgment be affirmed, and I yield the rest of my time to counsel for MEDA. Okay. Thank you. Good morning, your honors. May it please the court, Chris Chorba on behalf of defendant MEDA at the time of the settlement known as Facebook. I'll be equally brief. I'd just like to pick up on a few of the issues that the objector's counsel raised. First of all, I won't spend very much time on this, but on the sealing issue, Mr. Isaacson is incorrect. He was a party. There was a certified class at the preliminary approval order, so therefore he was a member of the class. Indeed, he has to be a member of the class in order to have standing to object to it. He did not opt out. He has class counsel. I know they're now in conflict, but at the time this settlement was presented to the district court, he had every opportunity to approach counsel and ask for the information to be unsealed. There was no sealing motion, but there were less formal means that he could have pursued, and he simply didn't. So there's no basis upon which this court should, can, or should review that decision. He's citing to you as well portions that were sealed exhibits. The complaints were not any of the pages that he held up to you that were entirely blacked out. The second amended complaint had only 13 of 57 pages that had parts sealed, and for six of those 13 pages you were talking about a few words. So that cannot provide a basis. Certainly the complaints contain more than what Rule 8 required, which is a short and plain statement of the relief requested. Second, the argument that was raised that Judge Davila somehow applied an incorrect presumption is just factually wrong, and it misstates his opinion. Judge Nelson will recall that Judge Davila oversaw the Apple decision. I was counsel for Apple in that case. By the time of the final approval hearing, Judge Davila was well aware and counsel made sure he was well aware not to include that language. Judge Nelson, I remember you saying to me when I said, what more could Judge Davila have done? How about he applies the correct standard? He did that here. And the quotation, this court has never held that you can't use the word presumption in any final approval order, and that's essentially what their argument is. When Judge Davila cited a district court decision, what he specifically said was the reaction of the class members here has been favorable, and that creates a presumption that the terms were favorable. Counsel just misrepresented to you and said that he used the words presumption of fairness. He did not. So that is just factually incorrect. And counsel, isn't the reaction of the class one of the handling factors as well? Absolutely, Your Honor. And so, again, he relied on a district court decision where that district court held that there's a presumption of favorability when you're evaluating that particular handling factor. He did not apply the incorrect standard. He was, again, well aware of it. I'll address briefly statutory damages and notice just briefly. Statutory damages, this court has held in Lane and Rodriguez that a district court is not, first of all, a district court may consider only one form of monetary relief. A district court is not required in approving the settlement to consider every available form of relief. And this is a unique case. For purposes of the settlement, class counsel went out and engaged a damages expert who calculated that the $90 million represented 100% of the available disgorgement that was one of their principal theories of damage. It's, of course, within class counsel's discretion to consider what relief to seek in a lawsuit because of the obvious due process problems. But the district court, I mean, it made that point, but it didn't rely on disgorgement. I mean, that seems to be the objectors keep saying, well, you can't just go to disgorgement. But that's not what the district court did, right? That's correct, Your Honor. There was extensive discussion. And in addition to his order, I'd encourage the court, if it needs to, to look at the final approval hearing transcript, which was more than three hours. He discussed at length the statutory damages. And, in fact, objectors in that hearing and in their paper said that a $1 trillion plus damages award would be unconstitutional. So we don't think there was error at all to the extent there was error that was explicitly invited. And finally, on notice, I would just say two things. Number one, the notice here faithfully applied the FJC's, the Federal Judicial Center's template notice. We all spend a lot of time in these cases designing notices that's accessible to the class so that they can understand them. And here, that is exactly what we had. And if you look at the very second question, and this is at ER 146, what is this lawsuit about? It described in plain English. There is no requirement in the law or this court's precedent that a court itemize the specific legal causes of action and contain statutory citations. In fact, had we done that, we would have faced a more viable objection that it was incomprehensible to average class members. And, as Your Honor noted in one of your questions, the complaints were available, and that part wasn't sealed, the statutory causes of action. None of that was sealed, nor were the statutory citations. The only other argument they have is they cite Rule 23C2B. To the extent that argument wasn't waived, let's look at the language of that. You spent a lot of time with BIPA. I promise you this is a much more simple statutory interpretation. It would be hard to get more complicated. It would be hard, and this one is a very easy one, so it's probably a good place for me to end. That rule states that the notice must state, quote, the class claims, issues, or defenses. First of all, it's in the disjunctive. Second of all, it does not say that you have to identify every legal cause of action. And, in fact, that would run contrary to the FJC's guidance. Here, it clearly identified the issues and defenses at a bare minimum, so we would dispute that there was any noncompliance with Rule 23C2B. Thank you. Thank you. Oh, you are doing the rebuttal. Okay. I misunderstood. So you've got two minutes. Thank you, Your Honor. Real quickly, regarding Hanlon, the district court did not do a Hanlon analysis. And what they're describing when they're talking about Lane is that the court is not obliged to go in and break down every feature of every proposed cause of action and so forth. The problem with Lane was that there was a class, but it was really a class where we had class members that had separate claims. They changed, they broadened the settlement class at the end and included folks that had statutory damage claims. And so when they're talking about there's no need to consider or calculate the individual statutory damages in Lane, what they're saying is we don't have enough information to do that. You brought us some folks who have this claim. You haven't told us how many folks have this claim. And so we're looking at this in a broad spectrum. Here, every class member has the same statutory damages claim, whether it's the Wiretap Act or it's the Information Privacy Act. It's either 10,000 in gross potential or 5,000 in gross potential. We realize that the damages, the aggregated statutory damages, are excessive. Wakefield, if it was an award, would take that 1.4 and say, we're going to look at where this number becomes oppressive and we're going to reduce it by due process standards accordingly. But what we've asked the court to do is what it is required to do under Hanlon, which is look at the strength of the case. When you look at the strength of the case, you cannot look at it in a vacuum. What are the gross calculable statutory damages? Now, let's adjust those according to litigation risk, and then let's talk about how those would be adjusted by due process. That makes good sense. It's very, very simple. We're not asking for a complex calculation. It's A, number of class members times B. You get out. Sorry for being so long. It goes quick. No, your arguments were well taken, and appreciate all counsel in this case. And the case is now submitted, and we are adjourned for the day. All rise.
judges: NELSON, FORREST, SANCHEZ